## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TYLER T. HEAGY,                                 :
    **Plaintiff,**                              :
                                                :
    **v.**                                      :       **CIVIL ACTION NO. 25-CV-2672**
                                                :
**J. TERRA,** *et al.*,                         :
    **Defendants.**                             :

## MEMORANDUM

**COSTELLO, J.**                                                           **JUNE 11, 2025**

Tyler T. Heagy, a prisoner incarcerated at SCI Phoenix ("SCIP"), filed this civil rights action against twenty-two employees of the Pennsylvania Department of Corrections in both their individual and official capacities.[1] The case involves an incident that occurred in the main yard at SCIP, various grievances Heagy has filed, the denial of parole, and a search of Heagy's cell. Heagy also seeks leave to proceed *in forma pauperis* and the appointment of counsel. For the following reasons, the Court will grant Heagy leave to proceed *in forma pauperis*, dismiss the Complaint with leave to amend in part, and deny the motion for counsel at this time.

---

[1] The named Defendants are three John/Jane Doe Correctional Officers; two John Doe Facility Grievance Coordinators; Correctional Officers Harris, Mathis, and Merger; K. Owens; Lieutenants Buggey and Gorden; T. Fondi; Jolene Sokolski; Unit Manager Luquis; Grievance Coordinator G. Orlando; Correction Classification Program Manager Muick; PREA Manager Lieutenant K. Patterson; Major Fitzgerald-Young; Deputy of Centralized Service C. Hensley; Superintendent J. Terra; K. Moore; Chief Grievance Officer Varner.

## I.    FACTUAL ALLEGATIONS[2]

### A.    Lack of Toilet Facilities

Heagy claims that his constitutional rights were violated when he was refused access to a staff bathroom while in the main yard at SCIP on May 17, 2023. (Compl. at 1, 3.) Because he could not use the staff bathroom that day, he had to pull down his pants, expose his buttocks and genitals, and defecate into a urinal in front of twenty people. (*Id*.) Heagy informed a John Doe and Jane Doe Correctional Officer that he needed a toilet. (*Id*. at 3.) John Doe told him he would have to "wait until half time" even though Heagy told him the need was urgent. (*Id*.) He asked John Doe to use the telephone and call someone. (*Id.*) Jane Doe told him she would go and check with another correctional officer who was in charge. (*Id*.) After speaking with a supervisor, Defendant John Doe II, John Doe and jane Doe told Heagy he had to wait. (*Id*. at 3-4.)

Heagy then walked past the staff bathroom and approached John Doe II and told him he would have an accident if he could not use a toilet. (*Id*. at 4.) John Doe II also told Heagy he would have to wait until half time. (*Id*.) Heagy responded that he would not defecate on himself and asked where he could go. (*Id.*) Doe II handed Heagy a clear trash bag and told him that someone before had used a bag to line the urinal on the yard and he could try it "but it didn't work out too well." (*Id*.) Heagy accepted the trash bag and was given toilet paper and told to tie up the bag and place it next to other trash when he was finished, and then take it to a trash can when he left the yard. (*Id*.) Heagy used the urinal to relieve his bowels as instructed but could

---

[2] The factual allegations are taken from Heagy's 108-page Complaint (ECF No. 1), to which the Court adopts the sequential pagination assigned by the CM/ECF docketing system. Simultaneous with his Complaint, Heagy submitted several affidavits from fellow inmates (ECF Nos. 2, 3) that the Court will deem to be part of the Complaint. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up as needed.

not conceal himself from others on the yard.  (*Id.*)  The trash bag was also on display to others

while he carried it to the trash can to dispose of it at the end of the yard session.  (*Id.*)  Heagy felt

"discriminated against and victimized by the entire situation from being denied access to a toilet

and forced into having to defecate in the urinal to parading his bowel movement back to [his]

housing unit's trash[, which] was extremely degrading and dehumanizing to [him]."  (*Id.*)

### B.    Cell Search

Heagy alleges that on October 17, 2023, Defendants Lieutenant Gordon and Correctional

Officers Harris, Mathis, and Merger conducted a search of the cell he occupied with a cellmate.

(*Id.* at 15.)  They were both removed from the cell and Harris did a pat down search.  (*Id.*)

Harris and Mathis searched Heagy's bedding, opened a medical supply bag, dumped its contents

and poured laundry detergent into the bag, and left his "legal effects" and personal property in

disarray.  (*Id.*)  The officers did not touch any item belonging to the cellmate.  (*Id.* at 15-16.)  On

October 24, 2023, Heagy reported the incident to a representative of the Pennsylvania Prison

Society, who told him he would submit a report.  (*Id.* at 16.)  On November 3, 2023, Heagy met

with Defendant Gordon regarding the cell search who told him he would investigate the

incident.[3]  (*Id.*)

### C.    Grievances

Much of Heagy's Complaint details his attempts to pursue grievances over the yard

incident and other subjects.  On May 18, 2023, he informed non-defendant Mrs. Runge about the

---

[3] Elsewhere in the Complaint, Heagy alleges that after their meeting, the Prison Society representative reported the incident to the DOC naming Gordon, Mathis, Harris and Merger as the staff involved in the search.  (*Id.* at 68.)  Heagy claims without any further explanation that, because he did not file a grievance about the incident until November 6, 2023, Gordon had to have been aware that he was named in the Prison Society report and should not have been involved in any investigation of the incident.  (*Id.*)

prison yard incident.  Runge told him that a report, including video footage, had been filed

through the Prison Rape Elimination Act ("PREA") department.  (*Id*. at 5.)  A day later, Runge

told Heagy that the PREA department found that no violation had occurred.  (*Id*.)  The same day,

Defendant Buggey called Heagy into a counselor's office to question him about the incident.

(*Id*.)  On May 30, Heagy filed Grievance No. 1037216 (the "216 Grievance") about the incident,

including that staff had failed to follow proper procedures for disposing of the trash bag and had

violated PREA.  (*Id*.)  On June 2, 2023, John Doe III Facility Grievance Coordinator forwarded

the 216 Grievance to Defendant Major Fitzgerald-Young, who filed a response to it on June 21

that was approved by Defendant K. Owens.  (*Id*. at 6.)  Fitzgerald-Young found that, despite

what Runge had told him, there was no video or audio of Heagy at the urinal where he claimed to

have been required to defecate.  She consulted with PREA Manager Lieutenant K. Patterson who

told Fitzgerald-Young that the incident did not fall within the definition of PREA because there

was no allegation amounting to sexual abuse or sexual contact.  (*Id*.)  From Fitzgerald-Young's

review of available video, she was unable to determine who provided Heagy with the trash bag

and toilet paper and concluded there was insufficient evidence to support his grievance.  (*Id*. at

7.)

      Heagy appealed the denial on July 10, 2023 to the Facility Manager, Defendant

Superintendent J. Terra.  (*Id*. at 7, 10.)  While that appeal was pending, Heagy received a

decision of the Pennsylvania Parole Board dated June 20, 2023, denying his application for

parole.[4]  (*Id*. at 10.)  On August 1, 2023, Terra upheld the denial of the grievance.  (*Id*. at 10-11.)

On August 14, Heagy submitted an "Inmate Appeal to Final Review."  (*Id*. at 11.)  On October

---

[4] Heagy was again denied parole one year later on June 24, 2024.  (Compl. at 63.)  That
incident is discussed separately.

17, 2023, Defendant Chief Grievance Officer D. Varner issued a response signed also by Defendant Keri Moore rejecting the appeal because the responses provided to Heagy appropriately addressed his concerns. (*Id*. at 14-15.)

Heagy filed Grievance 1060233 (the "233 Grievance") about the cell search on November 6, 2023, claiming that it was retaliatory. (*Id*. at 17.) On December 18, Defendant Fondi denied the 233 Grievance, noting that it was a random cell search. (*Id.* at 25.) Fondi stated that because the incident happened within the cell there was no way to prove that Heagy's property was damaged during the search. Fondi also found no evidence that the search was related to Heagy's filing of the 216 Grievance,[5] even though the 216 Grievance was denied on the same day as the cell search, because no one involved in the cell search was also named in the 216 Grievance or would have known about it. (*Id*. at 24-25.) Heagy appealed this denial on January 4, 2024. (*Id*. at 32.) On January 24, 2024, Defendant Terra rejected the 233 Grievance and Heagy appealed the denial on January 28, 2024. (*Id*. at 38.) Heagy then submitted an Inmate Appeal to Final Review on February 8, 2024. (*Id*. at 47.)

On November 2, 2023, Defendants Patterson, Muick, and Sokolski came to Heagy's unit to announce that a PREA auditor would be at SCIP. (*Id*. at 16.) Patterson states that she "needed everyone to say nothing but good things to the auditor." (*Id*.) After the announcement, Heagy told the three that he would like to speak with the auditor and asked Patterson if there was a sign-up sheet. Patterson asked, "Is it good or bad?" to which Heagy stated "It is about an incident that involve me." (*Id*.) Patterson replied "No, your [sic] not doing that" to which Heagy responded "The incident involves you, so I can understand your bias." (*Id*.) Muick told him he could

---

[5] In retyping the content of Fondi's decision into his Complaint, Heagy appears to have transposed the numbers of the 216 Grievance, referring to it as the "126" grievance. (Compl. at 25.)

contact the auditor by mailing a letter or write to Muick an inmate request to be interviewed, but that interviewees would be selected randomly. (*Id*.) On November 7, 2023, Heagy filed an inmate request to Muick requesting the PREA tracking system number for the May 17 prison yard incident. (*Id*. at 18.) Muick responded on November 16 that no incident number was generated because the investigation indicated the incident did not fall within PREA. (*Id*.) On November 22, 2023 Heagy filed Grievance No. 1064377 (the "377 Grievance") asserting that Patterson was improperly coaching inmates to only report good things to the PREA auditor and would not allow him to speak with the auditor. (*Id*. at 19-20.) He filed Grievance No. 1065030 (the "030 Grievance") on December 7, 2023 because no PREA tracking number had been assigned to his complaint about the prison yard incident. (*Id*. at 20.) Defendant Hensley rejected the 033 Grievance on January 23, 2024. (*Id*. at 37-38.) Heagy appealed that denial on February 7, 2024 (*id*. at 44), which Terra rejected on February 20, (*id*. at 54), leading to Heagy filing a final appeal on March 8, 2024. (*Id*.) The final appeal of the 030 Grievance was denied by Varner on May 17, 2024. (*Id*. at 63.)

Defendant Grievance Coordinator Orlando denied the 377 Grievance on December 8, 2023, concluding that the "Grievance does not indicate that you were personally affected by a Department of [sic] facility action or policy. Group grievances or grievances filed on behalf of another inmate are prohibited." (*Id*. at 22.) Heagy then resubmitted the 377 Grievance on December 14 by dropping it the lockbox in his housing unit. (*Id*.) Heagy believes that Defendant Luquis failed to retrieve the contents of the lockbox until December 18. (*Id*. at 24.) On that date, Defendant Orlando responded that the refiled 377 Grievance was denied because it was not filed within fifteen days of the event upon which the claim was based. (*Id*.) The

decision was upheld by Defendant Terra on January 9, 2024 (*id*. at 34-35) and Defendant Varner rejected a final appeal of the 377 Grievance on March 8, 2024.  (*Id*. at 61.)

Heagy file Grievance No. 1067256 (the "256 Grievance") on December 22, 2023, complaining that the failure to timely remove the contents of the lockbox violated his rights by causing the 377 Grievance to be deemed untimely.  (*Id*. at 25-26.)  The 256 Grievance was rejected by Orlando on December 28 because the 256 Grievance "dispute[d] previous grievances, appeal decisions, or staff members who rendered those decisions."  (*Id*. at 26.)  On January 3, 2024, Heagy tried to resubmit the 256 Grievance in response to Orlando's rejection (*id*. at 30), but it was rejected on January 5 because he attempted to reassert a prior grievance.  (*Id*. at 34.)  Heagy appealed the rejection on January 16 (*id.* at 35), and the decision was upheld by Terra on January 31, 2024.  (*Id*. at 43.)  Heagy filed a final appeal on February 15, 2024 (*id*. at 50), which was denied by Defendant Varner on April 2, 2024.  (*Id*. at 62.)

### D.     2024 Parole Denial

Heagy alleges that he was again denied parole on June 13, 2024.  (*Id*. at 63.)  He asserts that on April 28, 2025, he found a piece of paper on the floor of his cell that stated, "YOU DID NOT RECEIVE SUPPORT FOR PAROLE FROM S.C.I. PHOENIX."  (*Id.* (capitalization in original).)  He filed a grievance about his parole denial on May 4, 2025 ("the May 4 Grievance"[6]) asserting that SCIP personnel were retaliating against him "by weaponizing the institutional support for parole from [the prison] to influence [his] being denied parole and also in the form of intimidation to scare [him] away from submitting a 1983 civil suit" based on the incident when Heagy was required to defecate in the yard.  (*Id*. at 63-64.)  He spoke with a non-

---

[6] Unlike his other grievances, Heagy did not identify the May 4 Grievance by any number.

defendant counselor named Mr. Suarez on April 29 stating that he had received institutional support for his prior parole applications and did not understand why it was withheld. (*Id*. at 64.) He spoke with non-defendant Unit Manager Ms. Thomas the next day and asked her for permission to take documents with him to an "official visit with the Prison Society" but she denied the request. (*Id*.) He also asked about institutional support for his parole application, and she told him the decision did not come from the housing unit but from "higher ups," allegedly referring to Defendant Terra. (*Id*.) During the visit with the Prison Society, he stated he had been discriminated against in the parole process because of his grievances over the yard incident and claimed that prison officials were "weaponizing the institutional support for parole." (*Id*. at 65.) Heagy does not state any outcome of the May 4 grievance.

### E.    Claims

Heagy asserts a claim against the three John/Jane Doe Correctional Officers who refused him access to the staff bathroom and necessitated his using the urinal to defecate. (*Id*. at 66, 94-95, 103.) He asserts the DOC has a policy or practice that denies inmates the basic human need to access a toilet while in the yard or the ability to leave the yard. (*Id*.) Defendants Terra, Hensley and "others" deliberately enacted and enforce this policy with knowledge that there was a substantial chance that an inmate would have to use a toilet while in the yard and have to expose themselves in a degrading and dehumanizing situation. (*Id*.) He contends that the Defendants' acts were discriminatory and punitive, in violation of his rights under the Eighth Amendment and the Equal Protection Clause. (*Id*. at 66-67.) He asserts the yard incident also

constituted sexual abuse in violation of the Eighth Amendment (*id*. at 67-68), and that the Doe

Defendants failed to follow procedures for the disposal of the waste (*id*. at 71, 95).[7]

In addition, Heagy asserts a First Amendment "access-to-the-courts" claim based on the

October 17, 2023 cell search incident against Defendant Gordon, Harris, Mathis, and Merger

because they destroyed his belongings and left his personal property in disarray.  (*Id*. at 68.)  He

claims their actions, as well as Gordon's investigation of the incident, were in retaliation for his

using the grievance process.  (*Id*. at 68-69.)  Heagy asserts the same type of claim against Terra

based on the 2024 parole denial.  (*Id*. at 69.)  Defendant Buggey also allegedly violated his First

Amendment rights by failing to follow PREA investigation rules over the yard incident.  (*Id*. at

71, 95-96.)  Heagy also asserts "access-to-the-courts," PREA, and due process violations based

on the handling of his various grievances.  (*Id*. at 71-93, 96-103.)  Finally, he asserts a state law

claim of "sexual abuse" against the three Doe Defendants, Terra, Hensley, and "others" based on

the yard incident.  (*Id*. at 66, 93.)  As relief on his claims, Heagy seeks a declaration that his

---

[7] The allegation that the Doe Defendants failed to follow procedures for the disposal of the waste (*id*. at 71, 95) is not a plausible claim.  As many courts have held, "corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures."  *Bowman v. Wetzel*, No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases); *see also Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'") (citing *Laufgas v. Speziale*, No. 04-1697, 2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006)).  While Heagy cites to an OSHA regulation concerning blood-borne pathogens, 29 C.F.R. § 1910.1030, and asserts that fecal matter and urine are potentially hazardous materials (Compl. at 73), the regulation applies to occupational exposure to pathogens and there is nothing in the regulation to indicate it applies to prisoners' conditions of confinement.  *See* § 1910.1030 ("This section applies to all occupational exposure to blood or other potentially infectious materials.").  Nor are there any allegations suggesting that Heagy suffered any harm as a result of the alleged failure to comply with these procedures.  In sum, Heagy's allegations about the alleged failure to follow procedures for proper disposals of waste do not state a constitutional claim.

rights were violated, (*id*. at 93-106), various forms of injunctive relief (*id*. at 106-107), and money damages (*id*. at 107-108). He also wants the Court to deduct 5% of the DOC's federal funding for its violations of PREA. (*Id*. at 108.)

## II.    STANDARD OF REVIEW

The Court grants Heagy leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Heagy is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented

litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

The Court must also review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III.    DISCUSSION

Heagy predominately asserts constitutional claims against the DOC employees. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    Official Capacity Claims

Heagy seeks money damages against the DOC employees and has named them in their official as well as individual capacities.  The official capacity claims for money damages are dismissed because states, their agencies, and state officials acting in their official capacities are not considered "persons" for purposes of § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66, 70-71 (1989).  Also, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will*, 491 U.S. at 70-71.  The Commonwealth of Pennsylvania has not waived that immunity.  *See* 42 Pa. Cons. Stat. § 8521(b).  Accordingly, the claims for money damages Heagy seeks to assert against the DOC employees in their official capacity may not proceed.

### B.    Claims Based on Grievances

Heagy asserts PREA, due process, and other assorted constitutional violations based on the handling of his various grievances.  All claims based on the handling of his prison grievances are also dismissed because "prisoners do not have a constitutional right to prison grievance procedures."[8]  *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey*

---

[8] To the extent Heagy seeks to raise a claim under PREA unrelated to a grievance, such as his allegation that Defendant Buggey failed to follow PREA investigation rules over the yard incident, they too are not plausible.  "While the PREA was intended in part to increase the accountability of prison officials and to protect the Eighth Amendment rights of Federal, State, and local prisoners, nothing in the language of the statute establishes a private right of action."  *See Walsh v. N.J. Dep't of Corr.*, No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017); *see also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) (noting that "other

*v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).  Accordingly, allegations such as those raised by Heagy predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim.[9]  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

Accordingly, the claims against the following Defendants based on their involvements in the grievance process are dismissed with prejudice: Lieutenant Buggey, John Doe III, Fitzgerald-

---

courts addressing this issue have found that the PREA does not establish a private cause of action"); *Frederick v. Snyder Cnty. Prison*, No. 18-707, 2019 WL 1348436, at *4 (M.D. Pa. Mar. 22, 2019) (same).  Thus, Heagy cannot "bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through [an] attempt to enforce the [institution's] PREA policy via section 1983."  *See Bowens v. Emps. Of the Dep't of Corr.*, No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), *aff'd, Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017).

[9] Although a prisoner has no constitutional right to a grievance process, a prisoner can state a claim based on retaliation for filing a grievance.  *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (holding that a prisoner's filing of a grievance is constitutionally protected conduct) (citing *Mitchell*, 318 F.3d at 530; *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)).  Heagy's specific allegations of retaliation will be discussed below in connection with the substantive claims to which they relate.  Otherwise, he has not plausibly alleged that the denial of his grievances were causally linked to his filing of grievances or any other protected activity, so as to adequately suggest an inference of retaliation.

Young, Lieutenant K. Patterson, Superintendent J. Terra, Chief Grievance Officer Varner, K. Moore concerning the 216 Grievance; T. Fondi and Terra regarding the 233 Grievance; Deputy of Centralized Service C. Hensley, Terra, Varner, Grievance Coordinator G. Orlando, Unit Manager Luquis, Terra, and Varner regarding the 030 Grievance; and Orlando, Terra, and Varner regarding the 256 Grievance.

### C.    The Yard Incident

Heagy asserts claims based on the yard incident against the three John/Jane Doe Correctional Officers who refused him access to the staff bathroom and necessitated his using the urinal as a makeshift toilet to defecate. (Compl. at 66, 94-95, 103.) He contends that the Defendants' acts were discriminatory and punitive, in violation of his rights under the Eighth Amendment and the Equal Protection Clause. (*Id.* at 66-67.) He asserts the yard incident also constituted sexual abuse in violation of the Eighth Amendment. (*Id.* at 67-68.)

#### 1.    Eighth Amendment Claim

The Eighth Amendment's cruel and unusual punishment clause governs claims brought by convicted inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173

(3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))..

To allege the objective component of an Eighth Amendment violation based on the conditions of confinement, a prisoner must set forth facts that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement"). Such necessities include food, clothing, shelter, medical care and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "However, where conditions are not 'cruel and unusual' but merely 'restrictive and even harsh,' they do not violate the Eighth Amendment but rather 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (*per curiam*) (quoting *Rhodes*, 452 U.S. at 347). To allege the subjective component plausibly, a prisoner must also assert facts that the defendants acted with deliberate indifference. *Farmer*, 511 U.S. at 835. A claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."). Heagy has failed to allege a plausible Eighth Amendment violation.

Heagy's allegations that he was denied use of a staff bathroom while in the yard and was forced to use a urinal as a makeshift toilet do not satisfy the objective prong. Courts have determined that a prison's failure to provide regular access to an operable and sanitary toilet is a matter of grave concern from a constitutional perspective. *See, e.g., Benjamin v. Sielaff*, 752 F. Supp. 140, 141 n.3 (S.D.N.Y. 1990) (observing that "confining detainees in receiving rooms . . . which lack operative toilets and requiring that inmates be escorted by correction officers to bathrooms violates the Fourteenth Amendment") (citing *Flakes v. Percy*, 511 F. Supp. 1325, 1329 (W.D. Wi. 1981) ("However primitive and ordinary, the right to defecate and to urinate without awaiting the permission of the government . . . are rights close to the core of the liberty guaranteed by the due process clause.")). However, where the deprivation is "limited [in] severity and duration," *Martin v. Gearhart*, 712 F. App'x 179, 187 (3d Cir. 2017) (*per curiam*), or involves an exigency that is not "regular," it does not meet the objective prong. *See, e.g., Stewart v. Varano*, 601 F. App'x 107, 111 (3d Cir. 2015) (holding that prisoner failed to state a claim where he alleged was housed in a cell without a toilet for four days; allowed to leave his cell only once to urinate or defecate; and not provided with toilet paper or permitted to wash his hands); *Vacca v. Scott*, 119 F. App'x 678, 679 (5th Cir. 2005) (finding that, although plaintiff averred that defendants acted with deliberate indifference in denying him access to a bathroom, at most he alleged that he suffered generalized pain and discomfort, which is insufficient to state an Eighth Amendment violation); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (stating that a short deprivation of the right to use the bathroom, in the absence of physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation); *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000) (stating "we have no doubt that toilets can be unavailable for some period time without violating the Eighth Amendment"); *Hartsfield v.*

*Vidor*, 199 F.3d 305, 309-10 (6th Cir. 1999) (finding no constitutional violation where prisoner was not allowed to use toilet, was forced to sit in his own urine and was not provided with fresh drinking water for two 8-hour periods); *Abdur-Reheem-X v. McGinnis*, 198 F.3d 244 (6th Cir. 1999) ("[T]he Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets."); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992) (holding that inmates' being required to urinate occasionally in their cells when officers were unavailable to take them to the toilet did not violate the Eighth Amendment); *Dixie v. Castro*, No. 14-1255, 2015 WL 521389, at *3 (E.D. Ca. Feb. 9, 2015) (finding that plaintiff who was denied a toilet for 4-5 hours and was forced to remain with discharged feces in his shorts and running down his legs for a period exceeding 5 hours failed to allege a sufficiently serious deprivation); *Saenz v. Reeves*, No. 09-557, 2012 WL 4049975, *14-15 (E.D. Ca. Sept.13, 2012) (denial of toilet access on two separate occasions not sufficiently serious deprivation); *Whitted v. Lazerson*, No. 96-2746, 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998) (stating that the alleged violation was not objectively serious where the inmate was continually told he had to wait a few minutes to go to the toilet and the inmate ultimately urinated on himself after waiting an hour and a half); *see also Gilblom v. Gillipsie*, 435 F. App'x 165, 168 (3d Cir. 2011) (placement in a "dry cell" for 36 hours and the prison staff's repeated refusal to remove plaintiff's waste, while "unsettling" did not "rise to the level of extreme deprivation necessary for a successful Eighth Amendment claim."). Accordingly, the Eighth Amendment claim based on Heagy having to defecate in the yard is dismissed with prejudice.

Heagy also attempts to frame an Eighth Amendment claim in terms of sexual abuse. Sexual abuse and harassment violate an inmate's rights under the Eight Amendment. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) ("Today, we join numerous sister Circuits in holding

that prison sexual abuse can violate the Constitution.").  But an Eighth Amendment claim for

sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator.

*Id.* at 471 ("Our society requires prisoners to give up their liberty, but that surrender does not

encompass the basic right to be free from severe unwanted sexual *contact*.") (emphasis added);

*Williams v. Wetzel*, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eight Amendment

sexual conduct claim because the allegations did not involve any sexual contact between the

prisoner and the corrections officer); *McCain v. Wetzel*, No. 17-194, 2018 WL 1211507, at *3

(W.D. Pa. Mar. 8, 2018) (stating that "sexual harassment in the absence of contact or touching

does not establish an Eighth Amendment violation" (internal quotations omitted) (citing cases));

*Washington v. Gilmore*, No. 15-1031, 2017 WL 4155371, at *8 (W.D. Pa. Aug. 31, 2017)

(dismissing Eighth Amendment sexual assault claim where plaintiff did not allege any "direct

physical contact" with the alleged perpetrators), *report and recommendation adopted by*, 2017

WL 4155421 (W.D. Pa. Sept. 18, 2017).  Because Heagy does not allege any physical contact

with any alleged perpetrator, this aspect of his Eighth Amendment claim is also not plausible.

Neither did the need to expose himself and defecate within the view of other inmates state a

plausible claim under the circumstances alleged here.  *Scott v. Vaughn*, No. 05-1574, 2007 WL

1031380, at *6 (M.D. Pa. Mar. 30, 2007) (holding that a prisoner having to use the bathroom and

shower in the presence of others failed to state a plausible § 1983 claim).

### 2.    Equal Protection Claim

Heagy also asserts a violation of equal protection based on his allegation that staff could

use an available toilet in the yard, but he could not.  To state a plausible equal protection

violation, a prisoner must allege "that he was treated differently than other similarly situated

inmates, and that this different treatment was the result of intentional discrimination based on his

membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016)

(citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are

'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant

aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).

Additionally, to state a race-based equal protection claim, a plaintiff must allege that defendants

were motivated by racial animus. *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin

v. Breckenridge*, 403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir.

1986)). Heagy's claim based on facilities provided for prison staff that were off limits to inmates

is not plausible. He fails to allege that other inmates were allowed to use the staff facility or that

he was treated differently as a result of intentional discrimination based on his membership in a

protected class. Moreover, an isolated inconsistency in prison management such as Heagy

describes is generally not an equal protection violation. *See*, *e.g.*, *Shango v. Jurich*, 681 F.2d

1091, 1104 (7th Cir. 1982) (observing that "isolated events that adversely affect individuals are

not presumed to be a violation of the equal protection clause," as such incidents show at most "a

mere inconsistency in prison management which may not in itself constitute a cognizable equal

protection claim") (brackets omitted). The equal protection claim is, accordingly, dismissed with

prejudice.

### D.    Cell Search Claims

Heagy asserts a First Amendment "access-to-the-courts" claim based on the October 17,

2023 cell search incident against Defendant Gordon, Harris, Mathis, and Merger. He also claims

their actions, as well as Gordon's investigation of the incident, were retaliation for his using the

grievance process. (*Id*. at 68-69.)

### 1.    The Search

The fact that Heagy's cell was searched does not allege a plausible claim because "prisoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property").

### 2.    Property that was not Legal Materials

The allegation that Heagy's non-legal property was destroyed or disturbed by prison officials during the cell search is not a plausible constitutional claim.  Unauthorized intentional deprivations of property "[do] not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  A correctional facility's grievance procedure provides an adequate post-deprivation remedy for intentional deprivations of property by correctional employees.  *Tillman,* 221 F.3d at 422 (holding that prison grievance system provides adequate post-deprivation remedy).  Accordingly, Heagy's claim is not plausible and will be dismissed with prejudice because he had an adequate remedy through the prison grievance system.  *See, e.g.*, *Mbewe v. Delbalso*, No. 23-2054, 2024 WL 510500, at *3 (3d Cir. Feb. 9, 2024) (*per curiam*) ("The prison grievance procedure provides an adequate post-deprivation remedy, and the existence of this post-deprivation remedy forecloses [plaintiff's] due process deprivation of property claim" (citation omitted)); *Ransome v. Longstreth*, No. 23-1726,

2023 WL 6122139, at *2 (3d Cir. Sept. 19, 2023) (*per curiam*) (existence of prison grievance process precluded due process claim, even where prisoner alleged violations of the grievance policy). "Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy." *Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (*per curiam*) (citing 42 Pa. Cons. Stat. Ann. § 8522(b)(3)); *see also Lawson v. Ferguson*, No. 22-2365, 2023 WL 2770820, at *3 n.3 (3d Cir. Apr. 4, 2023) (*per curiam*) ("Even if the prison's grievance procedures were inadequate to address Lawson's claims, state tort law could serve as an adequate post-deprivation remedy."); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property).

### 3. Legal Materials - Access-to-Courts Claims

The allegation that prison officials disturbed Heagy's legal materials also fails to allege a plausible First Amendment access-to-courts claim as currently pled. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury

occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*. Moreover, prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008); *Shane v. Fauver*, 209 F. App'x 87, 89 (3d Cir. 2006) (*per curiam*) ("[T]he actual injury requirement is not met by every type of frustrated legal claim; constitutional protections are applied only to a prisoner's direct or collateral attack on his or her sentence, or challenges to prison conditions"); *see also Lewis*, 518 U.S. at 355 (the inability to litigate claims other than an attack on a sentence or conditions of confinements "is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration").

Heagy alleges only that Lieutenant Gordon, and Correctional Officers Harris, Mathis, and Merger disturbed his papers. He does not allege that any legal papers were destroyed or confiscated. More importantly, he fails to allege that any nonfrivolous and arguable condition of confinement claim or attack on his conviction was lost due to the cell search incident. This claim is thus dismissed. However, because it may be possible for Heagy to allege additional facts to cure the defects the Court has identified, he will be granted leave to file an amended complaint on this claim.

### 4.    Retaliation

Heagy also alleges that the cell search was conducted in retaliation for his using the grievance process. To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3)

the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson v. Rosum*, 834 F.3d 423, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment."). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422.

As noted, a prisoner's filing of a grievance is constitutionally protected conduct and satisfies the first prong of a retaliation claim. *See Robinson*, 204 F. App'x at 157. Nonetheless, Heagy's claim fails on the second prong because, in general, "courts have consistently held that a cell search is not an 'adverse action' for retaliation purposes." *Curtician v. Kessler*, No. 07-286, 2010 WL 6557099, *7 (W.D. Pa. 2010) (collecting cases); *see also Banks v. Rozum*, No. 14-27, 2015 WL 1186224, *7 (M.D. Pa. 2015) ("[T]he search of a cell is not a sufficient adverse action for purposes of a retaliation claim, irrelevant of whether it is intentional."), *aff'd*, 639 F. App'x 778, 781-82 (3d Cir. 2016); *Dickerson v. Gordon*, No. 13-1993, 2015 WL 5785575, *6 (M.D. Pa. 2015) (stating that courts have consistently held that a cell search is not an adverse action for

retaliation purposes (citing cases)).  Accordingly, the retaliation aspect of the cell search claim is dismissed with prejudice.

### E.    Parole Denial / Retaliation Claim

Heagy alleges that he was denied parole on June 24, 2024, and months later found a piece of paper on the floor of his cell that stated "YOU DID NOT RECEIVE SUPPORT FOR PAROLE FROM S.C.I. PHOENIX.  (Compl. at 63 (capitalization in original).)  Based on the 2024 parole denial, he claims that Terra acted in an arbitrary manner to scare Heagy from filing a civil lawsuit and in retaliation for his filing grievances, and that Terra conspired to influence the parole board decision.  (*Id*. at 69.)  He also claimed in the May 4 Grievance that nonspecific SCIP personnel were retaliating against him "by weaponizing the institutional support for parole from [the prison] to influence [his] being denied parole and also in the form of intimidation to scare [him] away from submitting a 1983 civil suit."  (*Id*. at 63-64.)  Unit Manager Ms. Thomas allegedly told him that the decision not to provide institutional support came from higher up, allegedly referring to Defendant Terra.  (*Id*. at 69.)

### 1.    Due Process Claim

Because Heagy avers that Terra acted arbitrarily, the Court understands him to be asserting a due process claim over his parole denial.  That claim is not plausible.  An examination of a procedural due process claim under the Fourteenth Amendment proceeds in two steps.  *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972).  First, the court must determine whether there exists a liberty or property interest which has been interfered with by the state.  *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Board of Regents*, 408 U.S. at 571).  Second, if and only if a petitioner establishes the

existence of a protected interest, the court must examine whether the procedures attendant upon that deprivation were constitutionally sufficient. *Id.*

The underlying liberty interest can be derived directly from the Due Process Clause or from the state's statutory scheme. *See Asquith v. Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir. 1999) ("A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state."). The Supreme Court has held that the Constitution does not establish a liberty interest in parole that invokes due process protections. *See Greenholtz v. Inmates of Ne. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Thus, if prisoners in Pennsylvania have a protected liberty interest in some aspect of their parole, it must derive from Pennsylvania law. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (recognizing that "States may . . . create liberty interests which are protected by the Due Process Clause"). The statutes governing Pennsylvania's Board of Probation and Parole, however, do not grant state prisoners any constitutionally protected liberty interest in being released on parole prior to the expiration of their controlling maximum sentences. *See Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) (recognizing the general principle that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled); *Coady v. Vaughn*, 770 A.2d 287, 289 (Pa. 2001) ("It is undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the board have a corresponding duty to grant the same."). Since Heagy has no constitutionally protected liberty interest in parole or any parole procedures, his claim for a due process violation based on Terra's alleged decision to withhold institutional support for his application necessarily must fail.

###### 2.    Retaliation

Heagy also alleges in conclusory fashion that Terra and unspecified other SCIP officials acted to thwart his parole to scare him from filing a civil lawsuit and in retaliation for his filing grievances.  (Compl. at 69.)  He also claimed in the May 4 Grievance that nonspecific SCIP personnel were retaliating against him "by weaponizing the institutional support for parole from [the prison] to influence [his] being denied parole and also in the form of intimidation to scare [him] away from submitting a 1983 civil suit."  (*Id*. at 63-64.)  Unlike the due process aspect of Heagy's claim, retaliation may be actionable even though it does not involve a protected liberty interest.  *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3rd Cir. 2000) (noting that "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part to punish an individual for the exercise of a constitutional right") (citing cases).  Nonetheless, the claim against Terra cannot proceed as pled because it is undeveloped and fails to allege a "substantial or motivating" causal link between the denial of parole and constitutionally protected conduct.  *See Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation.").  Notably, the parole denial occurred on June 24, 2024 but Heagy did not find the unattributed piece of paper on the floor of his cell until months later on April 28, 2025.  He does not allege how finding the paper approximately one month before he filed this lawsuit deterred him from exercising his constitutional rights given his extensive history of filing grievances both before and after the June 2024 parole decision.  In sum, he asserts no facts tying the decision to deny parole to any

particular grievance or other protected activity.  Accordingly, the claim will be dismissed but the Court will permit Heagy an opportunity to reassert the claim in an amended complaint.

###### F.      State Law Claim for Sex Abuse

Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims Heagy asserts based on sex abuse.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the

parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Heagy does not allege the citizenship of the parties. Rather, he provides only the address of SCIP for himself and the Defendants, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

## IV.    CONCLUSION

For the reasons stated, Heagy's Complaint is dismissed. The following claims are dismissed with prejudice: 1. all official capacity claims for money damages; 2. all claims based on grievances, deficiencies in the grievance system, or failure to investigate grievances and the incidents that led to them; 3. all Eighth Amendment claims, and the equal protection claim based on the May 17, 2023 incident in the SCIP yard; 4. all claims based on the October 17, 2023 cell search incident except the First Amendment access-to-courts claim based on destruction of legal materials; and 5. the due process claim based on the denial of parole on June 24, 2024. The following claims are dismissed without prejudice and with leave to file an amended complaint *only as to these claims*: 1. the First Amendment access-to-courts claim based on the destruction of legal materials; and 2. the retaliation claim based on the denial of parole on June 24, 2024. All state law claims are dismissed for lack of subject matter jurisdiction. The motion for counsel will be denied at this time as premature.[10]

---

[10] In determining whether to appoint *pro bono* counsel, the Court must first consider, as a threshold matter, whether the plaintiff's claim has "some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Because the Court has dismissed the Complaint with leave to amend in part, no final determination of the merits can be made at this time.

Heagy may file an amended complaint limited to the claims the Court has dismissed without prejudice.  An order dismissing the Complaint and providing further information on amendment will be entered separately.

**BY THE COURT:**

**MARY KAY COSTELLO, J.**