## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYLER T. HEAGY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-2672** |
| | : | |
| **J. TERRA,** *et al.*, | : | |
| **Defendants.** | : | |

### <u>MEMORANDUM</u>

**COSTELLO, J.**                                              **AUGUST  7, 2025**

In a prior Memorandum, the Court dismissed the Complaint filed by Tyler T. Heagy, a prisoner incarcerated at SCI Phoenix ("SCIP"). *See Heagy v. Terra*, No. 25-2672, 2025 WL 1656775 (E.D. Pa. June 11, 2025). Heagy was granted leave to file an amended complaint limited to claims the Court dismissed without prejudice: a First Amendment access-to-courts claim based on the destruction of legal materials, and a retaliation claim based on the denial of parole on June 24, 2024. *Id*. at *11. Heagy filed an Amended Complaint on July 15, 2025 reasserting only the retaliation claim. For the following reasons, the Amended Complaint, is dismissed.

### I.    BACKGROUND AND FACTUAL ALLEGATIONS[1]

By way of background, in his original Complaint Heagy asserted claims regarding the lack of toilet facilities in the main yard at SCIP that resulted in his having to use a urinal and a trash bag as a makeshift toilet and defecate in view of other inmates on May 17, 2023. (ECF No.

---

[1] The factual allegations are taken from Heagy's Amended Complaint ("AC" (ECF No. 12)) and attached exhibits. The Court adopts the sequential pagination assigned by the CM/ECF docketing system for all *pro se* submissions. Where the Court quotes from *pro se* submissions, punctuation, spelling, and capitalization errors will be cleaned up as needed.

1 at 1, 3.)  He asserted that this constituted a violation of the Prison Rape Elimination Act ("PREA").[2]  He informed a non-defendant named Mrs. Runge about the prison yard incident who told him that a PREA report, including video footage, had been filed.  (*Id*. at 5.)  On May 19, 2023 Runge told him that the PREA department concluded no violation had occurred.  (*Id*.)  On May 30, Heagy filed a grievance about the incident, including that staff failed to follow proper procedures for disposing of the trash bag and violated PREA.  (*Id*.)  That grievance was denied on initial review.  (*Id*. at 6.)  Heagy appealed the denial to the Facility Manager, Defendant Superintendent J. Terra.  (*Id*. at 7, 10.)  While that appeal was pending, Heagy received a decision of the Pennsylvania Parole Board dated June 20, 2023, denying his application for parole.  (*Id*. at 10.)  Terra upheld the denial of the grievance, and all of Heagy's subsequent appeals were also denied.  (*Id*. at 10-15.)  As detailed in the prior Memorandum, Heagy filed numerous other grievances about various topics, all of which were denied.  *Heagy*, 2025 WL 1656775 at *2-3.

Heagy was again denied parole in June 2024.  (*Id*. at 63.)  He asserted in the Complaint that on April 28, 2025 he found a piece of paper on the floor of his cell that stated, "YOU DID NOT RECEIVE SUPPORT FOR PAROLE FROM S.C.I. PHOENIX."  (*Id*. (capitalization in original).)  He filed a grievance centered on finding this paper on May 4, 2025 ("the May 4 Grievance"), asserting that SCIP personnel were retaliating against him "by weaponizing the institutional support for parole from [the prison] to influence [his] being denied parole and also in the form of intimidation to scare [him] away from submitting a 1983 civil suit" based on the makeshift toilet/PREA incident when Heagy was required to defecate in the yard.  (*Id*. at 63-64.)

---

[2] Heagy's prior claim under PREA was dismissed with prejudice because the statute does not create a private right of action.  *Heagy*, 2025 WL 1656775 at *5 n.8 (citing cases).

The Court understood Heagy to assert a First Amendment retaliation claim in his original Complaint based on the 2024 denial.[3]  The claim was dismissed without prejudice because it was conclusory.  *Heagy*, 2025 WL 1656775 at *10.

In the AC, Heagy raises two theories of retaliation concerning his parole.  The first asserts that unknown members of the Pennsylvania Parole Board who are employed by the DOC denied him parole in June 2024, and again in June 2025, to retaliate against him for having filed grievances and institutional complaints about the May 2023 yard incident.  (AC at 17-22 & 24-28; *see id.* at 17 ("To reasonably draw an inference of retaliation from the actions of the defendants . . . who were employed as Pennsylvania Parole Board members . . . you must first look at the totality of the circumstances surrounding the plaintiff during the time period between May 17, 2023, and June 13, 2024."); *see also id.* at 24 (same with regard to time period from May 17, 2023 through June 30, 2025).)  The second asserts that Defendant Terra denied Heagy institutional support for parole in 2025 to discourage him from filing a civil rights lawsuit based on the May 2023 yard incident.  (*Id.* at 22 ("To reasonably draw an inference of retaliation from the actions of defendant 'J. Terra', you must first look at the totality of the circumstances surrounding the plaintiff during the time period between May 17, 2023, and April of 2025"); *see generally id*. at 22-24.)  According to Heagy, the Parole Board's "Notice of Board Decision" dated June 13, 2024 stated the following as factors for the denial of parole:  the nature of his crime, that he posed a risk to the community, he refused to accept responsibility for his offenses, and he lacked remorse.  (AC at 7.)  For his next review, scheduled for June 2025, the Board

---

[3] Heagy's due process claim against Defendant Terra based on an alleged decision to withhold institutional support for his parole application was dismissed with prejudice because convicted prisoners in Pennsylvania have no statutory right to parole and, hence, no liberty interest upon which a due process claim can proceed.  *Heagy*, 2025 WL 1656775, at *10.

noted that it would consider, *inter alia*, "Whether you have maintained a favorable recommendation for parole from the department of corrections.  Whether you have maintained a clear misconduct record."  (*Id*.)  Heagy alleges that sometime in April 2025, his housing unit team gave him their institutional support for his 2025 parole review, which he refers to as being "staffed," based on a "vote sheet [that] had been sent around the institution."  (*Id*.)  But on April 28th, 2025, he picked up a piece of paper off the floor of his cell stating, "YOU DID NOT RECIEVED SUPPORT FOR PAROLE FROM S.C.I. PHOENIX."  (*Id*. at 7, 32, 34 (misspelling in original).[4])

Heagy submitted the May 4 Grievance asserting that SCIP officials were "weaponizing the institutional support for parole" by denying support in 2025 "when [he] had received institutional support for parole . . . the previous two times" as "intimidation to scare [him] away from submitting a 1983 civil suit regarding" the makeshift toilet/PREA incident.  (*Id*. at 8-9.)  He claimed that the denial of institutional support for his parole "was an arbitrary action by staff."  (*Id*.)  The initial denial of the May 4 Grievance stated:

> "Your grievance is that you were denied institutional support for parole by SCI Phoenix when you were staffed in  April 2025.  You imply that this denial was done in retaliation for a potential civil suit resulting from an incident that occurred in 2023.  You believe that this denial will result in being denied parole by the Parole Board. You request a remedy that reverses the reported institutional denial and $2 million.
>
> The decision to support or not support you for parole would not be reversed on the basis of past decisions or a grievance claiming the decision was done to intimidate you from submitting a civil lawsuit.  There is  no evidence that the

---

[4] Although in his Amended Complaint Heagy asserts he found one piece of paper, he attached two versions of the paper to his pleading.  One has handwritten and typed words (AC at 32) and the other has only typed words (*id*. at 34).  The version with his name, inmate number and cell number in handwriting is quoted above.  The fully typed version appears to state the opposite message, reading "YOUDID RECEIVE SUPPORT FRO PAROLE FROM SCI PHOENIX."  (*Id*. at 34 (misspellings in original).)  Both versions contain the typewritten name "SUAREZ CC2."  (*Id*. at 32, 34.)

4

decision in your case was done in retaliation.  Regardless, I pulled the vote sheet and discovered that the institution did in  fact support you for parole on April 18th, 2025.  I believe that your counselor has advised you of this.  Grievance and requested relief are denied."

(*Id*. at 9-10, 42.)  Heagy's subsequent appeals of the May 4 grievance were rejected.  (*Id*. at 10-17, 47.)  He was subsequently denied parole in June 2025.

Recognizing that the Court has already held that he may not state a due process claim because he was denied parole (*id*. at 20, 27; *see also Heagy*, 2025 WL 1656775, at *10), Heagy alleges that retaliation may nonetheless be inferred from the parole denial by Defendants Unknown Pennsylvania Parole Board Members and Unknown Pennsylvania Department of Corrections Officials from the totality of the circumstances surrounding the time period between the May 17, 2023, and the two parole denials in June 2024 and June 2025.  (*Id*. at 17, 24.) Specifically, after the incident, Mrs. Runge told him she filed a PREA complaint, and he reported the incident to the Pennsylvania Prison Society, which filed a complaint with the DOC. He then filed a grievance in regard to the incident.  (*Id*. at 18.)  The Board denied his 2023 parole review on June 20, 2023 citing, *inter alia*, the nature of his crimes and past criminal history, and noting his next review would consider whether he maintained a favorable recommendation for parole from the DOC and maintained a clear misconduct record.  (*Id*.)

During the next year, Heagy pursued his grievance over the incident, wrote to DOC's PREA auditor Brian Sutherland, wrote an inmate request to get the PREA Tracking System Incident Number for the incident, and met with Sutherland who informed him that there was no Tracking System Incident Number for the incident but he would be looking into it anyway.  (*Id*.) He received a response to his inmate request on November 16, 2023, stating that there was no Tracking System Incident Number for the incident because it had been investigated and determined that the complaint did not comport with PREA criteria.  (*Id*.)  He also filed several

other grievances, detailed in the Court's prior Memorandum, regarding the makeshift toilet/PREA incident or how his grievances were being handled, claiming "that there was a continual effort to conceal the incident that occurred on May 17th, 2023, and that the staff involved with these grievances were all conspiring together to conceal the incident . . . that involved sexual abuse of the plaintiff." (*Id.*; *see also Heagy*, 2025 WL 1656775, at *3.) Around the time that his parole application was "staffed" in April 2024, and when he had a pre-parole interview in May, SCIP allegedly began constructing toilets in the main yard due to the incident that occurred on May 17, 2023. (*Id.* at 19.) Also, a PREA compliance officer was allegedly transferred from SCIP to SCI Mahanoy for failing to comply with DOC policy in investigating the May 17, 2023 incident. (*Id.*)

While not easily understood, to further support his inference of retaliation against the Unknown Board Members, Heagy points to his prior parole denials, where the Board Members cited factors such as the nature of his crimes and criminal history but did *not* list institutional support, while the 2024 denial cited his risk to the community, refusal to accept responsibility, lack of remorse, and the nature of his crimes. (*Id.* at 19-20.) From this variance, he assumes "So the Pennsylvania Parole Board must have reasoned at the time they issued the 'Notice of Board Decision' and dated June 20th, 2023, [that he] was not a risk to the community, that [he] was accepting responsibility for the offense(s) he committed, and that [he] was remorseful." (*Id.* at 20.) Because, Heagy continues, the "only thing[s] that had occurred" between the 2023 parole denial and the 2024 parole denial were that he filed the various grievances over the May 17 incident, the Pennsylvania Prison Society filed a complaint about the incident, SCIP took the remedial measure of constructing toilets, the PREA compliance officer was transferred, and the

Sutherland investigated his PREA claim, he asserts that the 2024 parole denial was retaliatory. (*Id*. at 20-21.)

Heagy also alleges that retaliation may be inferred on the part of Defendant Terra based on the same chain of events. (*Id*. at 22-23.) He claims he found the piece of paper on the floor of his cell on April 28, 2025. (*Id*. at 23.) Between April 18th, 2025, and April 28th, 2025, Terra received the vote sheet that had been sent around SCIP regarding institutional support for Heagy's parole and allegedly denied the institutional support for parole in an action that "was arbitrary and retaliatory against Heagy in being denied parole due to the fact that the plaintiff had received institutional support for parole from S.C.I. Phoenix the previous two times the plaintiff went up for parole, and that the plaintiff had done nothing consequential to lose the institutional support from S.C.I. Phoenix." (*Id*.) Terra's action was allegedly "an intimidation tactic to scare [him] away from submitting his civil lawsuit" over the makeshift toilet/PREA incident. (*Id*.)

For relief on his retaliation claims, Heagy seeks a declaration that the Parole Board members' actions in denying him parole in 2024 and 2025 were unjustified, and that Terra's actions were arbitrary and retaliatory. (*Id*. at 28-29.) He seeks an injunction directing Terra to reverse his denial of institutional support for Heagy's parole application and be made to answer why he denied support. (*Id*. at 29.) He seeks an order directed to the Parole Board members that they immediately grant him parole and answer his questions why he was denied parole. (*Id*.) He also seeks money damages. (*Id*. at 29-30.)

## II.    STANDARD OF REVIEW

Because the Court has granted Heagy leave to proceed *in forma pauperis*, 28 U.S.C. §

1915(e)(2)(B)(ii) requires the Court to dismiss the AC if it fails to state a claim.[5]  Whether a

complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard

applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher*

*v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether

the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v.*

*Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will

accept the facts alleged in the AC as true, draw all reasonable inferences in the Heagy's favor,

and ask only whether the AC contains facts sufficient to state a plausible claim.  *See Shorter v.*

*United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by*

*Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.

*Iqbal*, 556 U.S. at 678.

Because Heagy is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v.*

*Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the

complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts

in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented

litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other

---

[5] After being granted leave to proceed *in forma pauperis*, Heagy paid the $350 filing fee
as required by the Prison Litigation Reform Act in one payment.  (ECF No. 13.)  Even though
the fee required by prisoners is now paid, Heagy retains his *in forma pauperis* status and the
Court retains authority to screen the AC under 28 U.S.C. § 1915(e)(2) (providing the Court may
screen a complaint "[n]otwithstanding any filing fee, or any portion thereof that may have been
paid").

litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

### A.    Declaratory and Injunctive Relief

Heagy's claims for declaratory and injunctive relief must be dismissed.  He seeks a declaration that the Defendants violated his rights by denying him parole in 2024 and 2025, and institutional support for parole in 2025.  But declaratory relief is unavailable to adjudicate past conduct, so Heagy's request is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

The request for an injunction ordering the Unknown Parole Board Members to immediately grant Heagy parole is not relief the Court can grant in a § 1983 action. The United States Supreme Court has held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see also Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (stating *Preiser* distinguished suits "challenging the conditions of confinement [from those challenging] the fact or length of custody"); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("[R]espondent's claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"). Instead, he must seek federal *habeas corpus* relief after exhausting available state court remedies. *See Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). These Supreme Court decisions stand for the proposition that prisoners may "use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement – either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81. As explained by the Court in *Wilkinson*,

> a state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Id*. at 81-82. Thus, a prisoner's challenge to a conviction, sentence, or parole proceeding that necessarily demonstrates the invalidity of the prisoner's confinement is barred.

*Wilkinson* does recognize an exception allowing parole challenges to be brought in a civil rights action where the plaintiff seeks "to render invalid the state procedures used to deny parole eligibility . . . or parole suitability" and does not seek an injunction ordering his immediate or

speedier release into the community. *Id*. at 82 (citations omitted). Such a suit under § 1983 would not necessarily invalidate the fact or duration of confinement, and at best, would afford a new eligibility review and speed consideration of a new parole application. *See id*. Heagy's request for an injunction ordering the Board members to grant him parole clearly falls into the category of § 1983 claims barred by *Wilkinson*, and not the exception. He is not challenging parole procedures; he seeks an order overturning the result reached by the Board members. His sole federal remedy is, accordingly, to file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Preiser*, 411 U.S. at 487-88.

### B.    Official Capacity Claims

Heagy has named the Defendants, all of whom are employees of the Commonwealth, in both their official and individual capacities. (AC at 2.) The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). The Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). Accordingly, all official capacity claims for money damages are dismissed with prejudice.

### C.    Individual Capacity Retaliation Claims

Recognizing he has no right to be granted parole (*see* AC at 20, 27), Heagy appears to frame his retaliation claim on the allegations that the Unknown Parole Board/DOC Defendants

denied him parole in June 2024 and June 2025 to retaliate against him for filing grievances and institutional complaints about the May 17, 2023 yard incident. He also claims that Terra's action to deny institutional support in April 2025 was retaliatory "to influence him being denied parole and also as an intimidation tactic to scare [him] away from submitting his civil lawsuit" over the May 17, 2023 yard incident. (*Id*. at 23.)

As noted earlier, the Court has already informed Heagy that, in order to state a plausible retaliation claim for money damages under the First Amendment, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *Heagy*, 2025 WL 1656775 at *9 (citing *Rauser*, 241 F.3d 330, 333 (3d Cir. 2001). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson v. Rosum*, 834 F.3d 423, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422. A prisoner's filing of a lawsuit is constitutionally protected conduct that can satisfy the first prong of a retaliation claim. *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 535 (E.D.Pa.2002) (citing *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997)). So too can the filing of a grievance. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (holding that a prisoner's filing of a grievance is constitutionally protected conduct). Being denied parole can also constitute a more than a *de minimis* adverse action sufficient to allege the second prong of a retaliation claim. *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (*per curiam*) ("In the prison context, we have held

that the following actions were sufficient to establish adversity: several months in disciplinary confinement; denial of parole, financial penalties, and transfer to an institution whose distance made regular family visits impossible; and placement in administrative segregation that severely limited access to the commissary, library, recreation, and rehabilitative programs.").

Heagy's allegations of retaliation in the institutional parole recommendation decisions based on his filing this lawsuit are not plausible. There are no allegations that the unknown Board Members knew of the yard incident, Heagy's grievances, and the events leading to his filing this lawsuit when they voted on his parole. There is no allegation that Terra knew about a lawsuit possibly being filed when he made a parole recommendation. Heagy mentions his parole denials and that the institutional support for his parole was "weaponized" as an intimidation tactic to scare him away from filing a lawsuit about the makeshift toilet/PREA incident. (AC at 9, 12, 21.) But Heagy fails to allege that any Unknown DOC Defendant knew he was threatening to file a lawsuit based on the makeshift toilet/PREA incident or that Terra, in particular, had reason to know a lawsuit was coming when the parole recommendations were allegedly made. In other words, the possibility of a threat of a future lawsuit that was unknown to a defendant when that defendant acted, cannot support a retaliation claim since it cannot be "a substantial or motivating factor" for the adverse action. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 197 (3d Cir. 2015) (holding that the plaintiff could not establish a causal connection between her protected activities and the adverse action because the decision makers "lacked knowledge of her protected conduct"); *Brown v. Smith*, No. 23-780, 2024 WL 4094279, at *7 n.7 (E.D. Pa. Sept. 5, 2024) (stating that the "requirement that the defendant have knowledge of the protected conduct arises instead from the requirement that the protected conduct be a substantial or motivating factor for the adverse action" (internal quotation marks omitted)). Heagy's

13

attempts to allege causation for his claim against the Defendants is based on inferences he perceives from the rationale for the 2023 denial decision – his entirely speculative supposition that the Board Members concluded at that point that he no longer posed a risk to the community, he was accepting responsibility for the offenses he committed, and that he was remorseful – and he thus concludes that lack of institutional support because he was threatening a lawsuit was the only factor causing the denial of his parole in 2024 or 2025. But he does not allege that any Defendant had knowledge of this threatened lawsuit and acted based on that knowledge. His attempt to allege causation based on the past reasons for his parole denials does not plausibly allege knowledge of the threatened lawsuit as a cause for the alleged lack of support for his later parole applications and cannot cure the failure to allege causation. *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct.").

Heagy also asserts the Unknown Board Members were arbitrary and retaliatory by denying him parole in June 2024 in "weaponizing the parole process" because the "only thing[s] that had occurred" between the 2023 parole denial and the 2024 parole denial were that Heagy filed the various grievances over the May 17, 2023 makeshift toilet/PREA incident, the Pennsylvania Prison Society filed a complaint about the incident, SCIP took the remedial measure of constructing toilets, the PREA compliance officer was transferred, and that Sutherland investigated his PREA claim. (*Id*. at 20-21.) This claim is also not plausible since Heagy fails to allege that any Unknown Board Member had knowledge of the incident, his having filed grievances, or any of the other events when they denied his parole. His focus on the allegedly varying reasons stated in the yearly parole decisions, and his speculative assumptions

14

about the Board's decision making are not plausible allegations of knowledge, meaning that his retaliation claim is merely an attempt to refashion an impermissible due process claim against the Unknown Board Members into something else.

## IV.    CONCLUSION

For the reasons stated, Heagy's Amended Complaint will be dismissed with prejudice. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story"); *Robinson v. Delbalso*, No. 22-2378, slip op. at 5 (3d. Cir. Nov. 28, 2022) (*per curiam*) ("because Robinson has had two opportunities to amend his complaint, declining to grant further leave to amend was proper.");  *Posey v. Klinefelter*, No. 25-1428, 2025 WL 1937084, at *2 (3d Cir. July 15, 2025) (affirming dismissal where the "District Court's orders and the Magistrate Judge's reports and recommendations all informed Posey as to the ways in which the complaints were deficient and provided multiple opportunities to amend, and yet Posey repeatedly failed to do so").

An appropriate Order will be entered separately.  *See* Federal Rule of Civil Procedure 58(a).

**BY THE COURT:**

**MARY KAY COSTELLO, J.**